Fremont-Smith, J.
The plaintiff, Chandra Priestly, brought this action alleging that an officer of the Massachusetts State Police, Trooper James S. Douc-ette, violated her Fourth Amendment constitutional right to be free from unreasonable searches and seizures when he stopped her motorcycle on the Massachusetts Turnpike. Priestly further alleges that the Massachusetts State Police have established or condoned the systematic illegal stopping of vehicles. Defendants Frank P. Baron, a Captain in the Massachusetts State Police, and Charles F. Henderson, a Colonel in the State Police, were Doucette’s superiors and reviewed defendant Sergeant John R. Cunningham’s investigation of the matter. In a previous decision, Priestly v. Doucette, 1 Mass. L. Rptr. No. 20, 415 (February 7, 1994), the court (Butler, J.) granted, in part, Baran and Henderson’s motion to dismiss. Baran and Henderson now move for summary judgment on the remaining counts pursuant to Mass.R.Civ.P. 56. For the following reasons, the motion is allowed.
BACKGROUND
The undisputed material facts are as follows. In the early evening of June 17, 1992, amidst rush hour traffic, Priestly was driving her motorcycle westbound on the Massachusetts Turnpike in the far left lane. Trooper Doucette pulled behind Priestly and told her, through a loudspeaker, to move to the right lane. He then followed Priestly as she slowed and pulled into the breakdown lane. Doucette approached Priestly and asked for her driver’s license and motorcycle inspection sticker. Doucette, after viewing the license and sticker, asked Priestly why she rode a motorcycle. After receiving a response, Priestly alleges that Douc-ette twice said something like “Ladies don’t ride motorcycles.” She cannot now recall precisely what was said. (Priestly Deposition, page 36.) Doucette also allegedly stated that his personal agenda for the day was to check motorcycles for inspection stickers. He allegedly refused to provide Priestly with any other explanation as to why she had been pulled over. In his report of the incident, however, Doucette states that he signaled Priestly because she was causing congestion/safety problems by driving below the posted speed limit in the passing lane during rush hour. After speaking to Priestly for a total of five to fifteen minutes, Doucette allowed Priestly to go.
*254 After the incident Priestly, pursuant to the appropriate administrative procedures, filed a written grievance with the Massachusetts State Police. State Trooper John Cunningham, the person in charge of investigating the grievance, arranged to meet with Priestly to discuss the incident. At this meeting Cunningham allegedly attempted, unsuccessfully, to intimidate Priestly. In her complaint, Priestly also alleges that Cunningham told her it was standard State Police procedure to randomly stop motorcycles to check inspection stickers. In her deposition testimony, however, Priestly conceded that she could not recall what was said at the meeting. (Priestly Deposition, pages 69-70; 125-26.) Her grievance was subsequently denied in a memorandum written by Cunningham.
Defendant Baran reviewed Cunningham’s memorandum, the plaintiffs written complaint and Doucette’s report. Baran agreed with Cunningham’s conclusions and sent Priestly a letter stating that Cunningham’s investigation had revealed that Douc-ette was in compliance with the established guidelines and procedures of the State Police. Priestly was informed that no disciplinary action would be taken against Doucette. Colonel Henderson, Doucette’s supervisor, received a copy of the Cunningham report.
Baran and Henderson both deny that Massachusetts State Troopers are permitted to randomly stop motorcyclists to check vehicle inspection stickers. They further state that they are unaware of any instance in which a State Trooper has engaged in such behavior.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further], that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson v. Time, Inc., supra at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for sum-maryjudgment.”LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. 42 U.S.C. §1983 (Count I)
Baran and Henderson have moved for summary judgment on Count I asserting that Priestly has failed to allege specific facts which would raise a genuine issue as to whether Baran and Henderson, in their individual capacities, promoted, condoned or approved a polity of randomly stopping vehicles.
42 U.S.C. §1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .
42 U.S.C. §1983.
To establish personal liability under §1983, Priestly must prove that Baran and Henderson, while acting under color of state law, deprived her of a federal right. 42 U.S.C. §1983; Kentucky v. Graham, 473 U.S. 159, 166 (1985). Because the doctrine of respondeat superior does not apply to §1983 actions, Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990), cert. denied, 111 S.Ct. 2266 (1991), Priestly must prove that Baran and Henderson, as supervisors, performed acts or omissions which “affirmatively link” them to the acts of the offending employee. Id. In addition, Baran and Henderson’s conduct must reflect a “reckless or callous indifference to the constitutional rights of others.” Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553; 562 (1989).
Priestly has not submitted any evidence sufficient to raise an issue of material fact as to whether Baran and/or Henderson had promoted, condoned or approved the random stopping of motorcyclists, or as to whether Baran and/or Henderson even knew or should have known that State Troopers were violating people’s constitutional rights. Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir. 1989), cert. denied, 493 U.S. 820 (1989). The only argument presented by Priestly on this issue was Doucette’s alleged failure to provide an explanation for pulling Priestly over and the alleged statement made by Cunningham (which Priestly, at her deposition, could no longer recall) that State Troopers would occasionally set an agenda of randomly stopping motorcyclists to check vehicle inspection stickers. There is thus no sufficient evidence to raise the necessary inference that Henderson and Baran themselves either condoned or recklessly allowed Priestly’s constitutional rights to be violated by Doucette. See Gaudreault v. Municipality of Salem, *255 Mass., supra at 209; Bordanaro v. McLeod, supra at 1156-57, citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Because Priestly has failed to allege specific facts which raise a genuine issue of material fact as to Baran and Henderson’s supervisory liability, judgment must enter, as a matter of law, for the defendants on Count I.
B.G.L.c. 12, §§11H & I (Count II)
Baran and Henderson move for summary judgment on Count II asserting that because G.L.c. 12, §§11H & I and 42 U.S.C. §1983 are equivalent, there can be no individual liability under the state statute for the reasons discussed above.
General laws c. 12, §1II provides in relevant part:
Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States or rights secured by the constitution or laws of the commonwealth, has been interfered with, as described in Section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief. . . including the award of compensatory money damages.
G.L.c. 12, §111.
The Supreme Judicial Court in Batchelder v. Allied Stores Corp., 393 Mass. 819 (1985), stated that the remedy provided under G.L.c. 12, §111 was intended to be coextensive with 42 U.S.C. §1983 (except the state statute does not require state action). Batchelder, supra at 822-23. Due to the equivalent nature of these statutes the court concludes, for the reasons set forth in part A, supra, that Priestly has failed to allege specific facts which raise a genuine issue of material fact as to Baran and Henderson’s liability under G.L.c. 12, §§11H & I. Baran and Henderson are therefore entitled to summary judgment on count II.
C.G.L.c. 214, §1B Invasion of Privacy (CountV)
In CountV of her complaint, Priestly seeks damages for invasion of privacy. General Laws c. 214, §1B provides that “(a) person shall have a right against unreasonable, substantial or serious interference with his privacy.” G.L.c. 214, §1B.
Baran and Henderson assert that because Priestly has failed to produce any credible evidence of a state police policy promoting or condoning the random stopping of motorcycles, they cannot be held liable for invading Priestly’s privacy. The Court agrees. The only reasonable inference a jury could draw based on the evidence presented for this motion is that Doucette acted without the tacit or express approval of Baran or Henderson. Thus, neither Baran nor Henderson could be found liable for invasion of privacy. Summary judgment must therefore enter for the defendants on Count V.
D.Intentional Torts (Count VI)
In Count VI of her complaint, Priestly alleges that Doucette and Cunningham assaulted and falsely imprisoned her. As there is no evidence sufficient to raise an issue of material fact as to whether Doucette or Cunningham committed these intentional torts, summary judgment is allowed as to Count VI.
ORDER
For the foregoing reasons, Baran and Henderson’s motion for summary judgment is ALLOWED, and judgment is entered for the defendants.